

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| SAMUEL JACOB PEREZ, | § | No. 08-14-00050-CR |
| Appellant, | § | Appeal from the |
| v. | § | 41st District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20120D04862) |
| | § | |

# **O P I N I O N**

Appellant Samuel Jacob Perez appeals his murder conviction.   On appeal, Appellant complains about two evidentiary rulings made by the trial court.   Appellant contends the trial court erred in allowing a police officer to testify about a statement the officer heard over a cell phone that Appellant had "just killed someone."   Appellant also contends the trial court erred in excluding the prior written statement of a defense witness who could not recall giving the written statement or the events described in the statement.   We affirm.

## **BACKGROUND**

Appellant was charged with murdering Cameron Canada by stabbing him with a knife. The charges arose from a street fight that broke out outside a house party on Bob Mitchell Street in

El Paso on July 22, 2012. When Canada and his friend Adarius Silas were attempting to leave the party after the fighting broke out, Appellant and three other men charged them yelling: "Fuck you, black people. What are you doing over here? This is [Chuco] town[.]"[1] Adarius testified that Appellant pulled a knife and stabbed Canada, and then fled the scene with the others. Cameron died, and it was later determined that he had bled to death from two stab wounds to the chest. Adarius identified Appellant from a photo lineup as the person who had stabbed Canada.[2] Adarius also identified Appellant at trial as the assailant.[3]

## DISCUSSION

### Admission of the Cell Phone Testimony

Appellant's first issue concerns the admission of the testimony of Police Officer Samuel Ornelas that he heard someone say, "Sammy just killed someone" over a cell phone owned by one of the party attendees. Appellant objected to the statement as hearsay. The State argued, among other things, that the statement was admissible as an excited utterance. The trial court ultimately admitted the evidence under the excited utterance hearsay exception and as the non-hearsay statement of a co-conspirator. *See* TEX.R.EVID. 803(2) (designating as an exception to hearsay, a statement relating to a startling event made while the declarant was under the stress of excitement that it caused); TEX.R.EVID. 801(e)(2)(E) (designating as non-hearsay, a statement made by a party's co-conspirator during and in furtherance of a conspiracy).

---

[1] "Chuco Town" is sometimes used as a nickname for El Paso, Texas.

[2] In a photo lineup held a few hours after the stabbing, Adarius was unable to identify Appellant from a five-year-old photo. Three days later, Adarius identified Appellant as the person who had stabbed Canada in a second photo lineup that included a more recent photograph of Appellant.

[3] Party attendee Randy Rivera also identified Appellant through a photo lineup as one of the Hispanic persons he saw punching and kicking a black man on the ground. Another party attendee, Sinai Marquez, identified Appellant as the person he saw pull out a knife at the party and say that if anything happened that night, he was ready for it.

*Background*

Prior to ruling, the trial court had the State take Officer Ornelas on voir dire outside the presence of the jury to establish the admissibility of his statement. Officer Ornelas testified that when he arrived at the scene, he came into contact with one of the party attendees, Ruben Valenzuela, who had blood on his hands and on his torn clothes, and observed that Valenzuela looked like he had been in a fight. Even though police officers at the scene had instructed everyone to refrain from using their phones in order to restrict interaction between potential witnesses, Valenzuela began using his phone and refused to stop using it when directed. This prompted Officer Ornelas to take Valenzuela's phone from him and terminate the call, which caused Valenzuela to become "real aggressive towards the officers." As a result, Officer Ornelas escorted Valenzuela to his police vehicle, made him sit in the backseat, and placed Valenzuela's phone on the vehicle's trunk.

Valenzuela's phone "kept on going off" repeatedly, so Officer Ornelas answered it, intending to advise the caller that Valenzuela could not speak because he was in custody. Before Officer Ornelas could say anything, however, the caller quickly yelled in an excited tone, "[t]he Circle K, Circle K. Sammy just killed someone," and terminated the call. Valenzuela's phone continued to ring, and Officer Ornelas answered it again. The caller again stated, "Circle K. Circle K," and again the phone call was disconnected. Officer Ornelas asked Valenzuela who "Sammy" was, and Valenzuela identified Sammy as his cousin. Valenzuela informed Officer Ornelas that Sammy "took my car," a white Impala. When Valenzuela's phone rang again, Officer Ornelas answered it, and impersonating Valenzuela, told the caller to "[m]eet me at the Circle K." He then had other officers "set up" at the closest Circle K store at Trawood and George

3

Dieter streets.

Valenzuela's phone rang again, and the caller said, "We're here at Circle K." At the same time, the officers at the Circle K reported by radio to Officer Ornelas that a white Impala had just arrived at the Circle K. Officer Ornelas testified that the officers "proceeded to take the vehicle down and located [Appellant] and I believe his brother, Daniel Perez[.]"

The trial court overruled Appellant's hearsay objection and allowed Officer Ornelas to testify before the jury. Officer Ornelas's testimony before the jury was essentially consistent with his voir dire testimony.[4] As in voir dire, Officer Ornelas testified that the caller yelled over the phone in a "real excited, real high-pitched" voice: "Sammy just killed someone." A cell phone was found in the white Impala, and was later determined to be the one used to call Valenzuela's phone eleven times between 1:31 and 1:39 a.m.

In Issue One, Appellant argues that Officer Ornelas should not have been allowed to testify that the caller declared "Sammy just killed someone," and that the trial court abused its discretion in allowing that statement under the excited utterance exception to the hearsay rule and as the statement of a co-conspirator.

### *Standard of Review*

We review a trial court's determination whether evidence is admissible under the excited utterance exception to the hearsay rule for an abuse of discretion. *Zuliani v. State*, 97 S.W.3d 589,

---

[4] In his testimony before the jury, Officer Ornelas was not allowed to testify that Valenzuela informed him that Sammy was his cousin or that his vehicle was a white Impala, but rather testified only that he discussed with Valenzuela the type of vehicle they might be driving and that he let the officers at the Circle K know that "the vehicle should be coming[.]" Officer Ornelas was also not allowed to testify that the arresting officers discovered Appellant and his brother Daniel in the vehicle. Other testimony, however, established that Appellant and Daniel Perez were occupying the vehicle. Valenzuela testified that he owned a white Impala, and went to the party with his cousin, Sammy, and that Daniel Perez had not attended the party. He recalled being detained by officers, that someone had called him on his telephone, and that his phone had been confiscated. Valenzuela identified the caller as "Daniel." Neither Appellant nor Daniel Perez testified during the guilt phase of trial.

4

595 (Tex.Crim.App. 2003) ("The admissibility of an out-of-court statement under the exceptions to the general hearsay exclusion rule is within the trial court's discretion."); *Wall v. State*, 184 S.W.3d 730, 743 (Tex.Crim.App. 2006) ("appellate courts review a trial court's determination of whether evidence is admissible under the excited utterance exception to the hearsay rule only for an abuse of discretion"). A trial judge abuses her discretion when her decision falls outside the zone of reasonable disagreement. *Henley v. State*, No. PD-0257-15, 2016 WL 3564247, at *2 (Tex.Crim.App. June 29, 2016); *Moses v. State,* 105 S.W.3d 622, 627 (Tex.Crim.App. 2003); *Torres v. State,* 71 S.W.3d 758, 760 (Tex.Crim.App. 2002). Before a reviewing court may reverse the trial court's decision, "'it must find the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" *Henley*, 2016 WL 3564247, at *2 (quoting *Taylor v. State,* 268 S.W.3d 571, 579 (Tex.Crim.App. 2008)). Generally, evidentiary error constitutes non-constitutional error which we review under Rule 44.2(b). *Walters v. State*, 247 S.W.3d 204, 219 (Tex.Crim.App. 2007). We must disregard evidentiary error which does not affect an appellant's substantial rights. TEX.R.APP.P. 44.2(b).

### *The Excited Utterance Hearsay Exception*

A statement is admissible as an exception to the hearsay rule when it relates to a startling event made while the declarant was under the stress of excitement that it caused. TEX.R.EVID. 803(2). Appellant correctly notes that the critical determination whether a statement falls within the excited utterance exception is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the startling event at the time he made the statement. *Zuliani*, 97 S.W.3d at 596; *McFarland v. State*, 845 S.W.2d 824, 846 (Tex.Crim.App. 1992). As a reviewing court, we must determine whether the statement was made "'under such circumstances as would

5

reasonably show that it resulted from impulse rather than reason and reflection.'" *Zuliani*, 97 S.W.3d at 596 (quoting *Fowler v. State*, 379 S.W.2d 345, 347 (Tex.Crim.App. 1964)).

Appellant argues that the trial court's decision to admit the statement was "based on limited facts" that failed to show the "startling event" that triggered the spontaneous statement and the state of mind of the declarant. We disagree.

First, the statement itself revealed the "startling event"—that "Sammy just killed someone." Also, contrary to Appellant's assertions, there was sufficient evidence from which to reasonably infer that Daniel Perez, Appellant's brother, was the caller. While Officer Ornelas conceded that he had no idea who the caller was, Valenzuela identified the caller as "Daniel." Further, Officer Ornelas had directed the caller to meet at the Circle K, and the caller informed Ornelas when they arrived at the Circle K. Subsequently, the officers at the Circle K discovered Appellant and Daniel Perez in the vehicle, along with the cell phone that was shown to have made eleven calls in quick succession to Valenzuela's phone. Since the statement was made in the third person, it was reasonable to assume that Daniel (not Appellant) had made the statement. Learning that one's brother had "just killed someone" would certainly qualify as a "startling event."

The evidence also demonstrated that the caller was under the stress of the startling event at the time the statement was made. The evidence showed that when Officer Ornelas answered Valenzuela's phone, the caller—"yelling" in a "real excited, real high-pitched" voice—exclaimed that "Sammy just killed someone." The evidence also showed that the caller had made eleven calls to Valenzuela's phone over an eight-minute period, further demonstrating the urgent nature of the calls.

6

Moreover, in determining whether a hearsay statement is admissible as an excited utterance, the court could consider the time elapsed and whether the statement was in response to a question. *Zuliani*, 97 S.W.3d at 595-96. There is no evidence that the caller knew he was speaking to a police officer or that Officer Ornelas questioned the caller. Rather, the evidence was undisputed that the caller spontaneously declared that "Sammy just killed someone," with no prompting or questioning from Officer Ornelas. Further, the evidence demonstrated that the first call to Valenzuela's phone was made within an hour of Canada being stabbed. There was evidence that the police had been alerted and were in route to the scene of the house party even before the stabbing occurred, and that they arrived on the scene by at least 12:30 a.m. The trial court was also presented with evidence showing that the telephone calls to Valenzuela, several of which were intercepted by Officer Ornelas, were made in quick succession from a phone found in the possession of only Appellant and his brother Daniel at the Circle K near where Cameron was stabbed approximately one hour earlier.

We conclude that based on the evidence before it, the trial court did not abuse its discretion in admitting the statement as an excited utterance. It was reasonable for the trial court to deduce from this evidence that Daniel was the caller, and that for Daniel, who was found with Appellant in Valenzuela's car following the stabbing, the startling event of learning his brother had killed someone was recent and urgent, and that when he spontaneously exclaimed that "Sammy just killed someone," he was under the stress of excitement caused by that startling event.

Appellant also mentions in his brief the "hearsay within hearsay nature of the utterance" without explaining what that nature is. He also argues that by admitting the statement "without a limiting instruction," the jury was "left with the impression that the statement is a

7

pseudo-confession by Appellant," but never states what limiting instruction he desired or how a limiting instruction would have cured any problem. Consequently, we are left to speculate exactly what Appellant is arguing. We presume Appellant is arguing that by admitting Officer Ornelas's testimony that the caller said "Sammy just killed someone," the trial court allowed the jury to infer from Officer Ornelas's testimony that Appellant had confessed to his brother that he had killed Canada (since there was evidence that Daniel made the call and that Appellant was found with Daniel in the vehicle at the Circle K). Even assuming that Appellant preserved this argument in the trial court and has adequately briefed the point on appeal, we would conclude the trial court did not abuse its discretion. Assuming the jury could infer a "pseudo-confession" by Appellant to his brother, that layer of testimony would be admissible as a statement against interest under Rule 803(24)[5] (or possibly as non-hearsay under Rule 801(e)(2)(A)), and Daniel's statement would be admissible as an excited utterance as discussed above, thereby negating any double-hearsay problem and any alleged need for a limiting instruction.

In sum, because the evidence supports the trial court's determination that the declarant was under the stress of a startling event at the time he stated "Sammy just killed someone," the trial court's admission of the statement as an excited utterance was not an abuse of discretion.[6] Issue

_____

[5] *See Woods v. State,* 152 S.W.3d 105, 112 (Tex.Crim.App. 2004) (statement must be self-inculpatory to be admissible under the statement against interest exception).

[6] Because the trial court properly admitted the declaration under the excited utterance exception to the hearsay rule, we need not address Appellant's complaint that the trial court erroneously determined the declaration was the non-hearsay statement of a co-conspirator. *See State v. White,* 306 S.W.3d 753, 757 n.10 (Tex.Crim.App. 2010) (reviewing court must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case). Moreover, even if the trial court's excited utterance ruling had been erroneous, it was non-constitutional error that did not affect Appellant's substantial rights and, therefore, must be disregarded. TEX.R.APP.P. 44.2(b). In addition to the excited utterance, there was other, substantial evidence identifying Appellant as the assailant, including Adarius' eyewitness testimony, as well as Randy Rivera's identification of Appellant as one of the Hispanic persons he saw punching and kicking a black man on the ground and Sinai Marquez's identification of Appellant as the person he saw pull out a knife at the party and say that if anything happened that night, he was ready for it.

8

One is overruled.

## Exclusion of the Written Statement

In Issue Two, Appellant complains the trial court erred when it excluded the prior written statement to the police of a defense witness, Lionel Martinez, who testified that he had no memory of making the statement or of the events described in the statement.[7] The State objected to admission of the written statement as hearsay, and the trial court excluded it from evidence.

On appeal, Appellant claims Lionel's written statement contained exculpatory information, and asserts the trial court "erroneously led both counsel down the path of argument as to hearsay within hearsay rather than the germane inquiry as to past recollection recorded." Appellant now contends the statement was admissible under Rule 803(5) of the Texas Rules of Evidence, which provides an exception to the hearsay rule for a recorded recollection. TEX.R.EVID. 803(5). The State contends Appellant failed to preserve error. We agree that Appellant failed to preserve error.

First, to preserve error regarding the exclusion of evidence, a party must not only tell the judge that the evidence is admissible, but must also explain why the evidence is admissible. *Reyna v. State,* 168 S.W.3d 173, 177 (Tex.Crim.App. 2005); *see also Jackson v. State*, No. AP-75707, 2010 WL 114409, at *9 (Tex.Crim.App. Jan. 13, 2010) (not designated for publication). Even if the proponent of the evidence at trial is the losing party on appeal, he must have informed the trial court why the evidence was admissible. *Reyna*, 168 S.W.3d at 177. And, the explanation given at trial must match the one urged on appeal. *Id.* at 179; *see also Jackson*,

[7] Lionel had suffered a head injury in an unrelated assault two months before he gave his statement to the police. Lionel testified his memory had deteriorated and that he had no current memory of attending the party, speaking with police, giving a statement to police, or of the events related in his written statement.

2010 WL 114409, at \*9. In particular, "'[i]n order to have evidence admitted under a hearsay exception, the proponent of the evidence must specify which exception he is relying upon.'" *Reyna,* 168 S.W.3d at 178 (quoting *Willover v. State*, 70 S.W.3d 841, 846 (Tex.Crim.App. 2002)). It is up to the defendant and "'not the trial court, to specify which exception to the hearsay rule he was relying upon or to specify how the evidence was not hearsay.'" *Id.* (quoting *Willover*, 70 S.W.3d at 845-46).

Appellant argued to the trial court that Lionel's statement should be admitted into evidence as a non-hearsay statement of a co-conspirator or under several exceptions to the hearsay rule, including as a present-sense impression, as an excited utterance, as a statement against interest, as a statement of an unavailable witness. TEX.R.EVID. 801(e)(2)(E), 803(1), (2), (24), 804, 805. But, Appellant never argued to the trial court that Lionel's statement should be admitted as a recorded recollection under Rule 803(5). Appellate courts may not reverse a trial court's ruling on any theory or basis that might have been applicable to the case, but was not raised. *Martinez v. State,* 91 S.W.3d 331, 336 (Tex.Crim.App. 2002). Because Appellant, as the complaining party on appeal, failed to bring to the trial court's attention the recorded recollection exception that he now presents on appeal, he has failed to preserve this issue for our review.

We also conclude that it was not "apparent from the context" that Appellant was asserting the recorded recollection exception in Rule 803(5) as a ground for admission. *See* TEX.R.APP.P. 33.1(a)(1)(A) (to preserve error a timely request, objection, or motion must be made that states the grounds "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context"); *see also Sample v. State,* 405 S.W.3d 295, 300 (Tex.App. – Fort Worth 2013, pet. ref'd) ("To preserve a complaint for review, a party must have

10

presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion."). For a complaint to be obvious without being explicitly stated and still be sufficient to preserve error, "there [must] have been statements or actions on the record that clearly indicate what the judge and opposing counsel understood the argument to be." *Clark v. State,* 365 S.W.3d 333, 339 (Tex.Crim.App. 2012). Contrary to Appellant's contention, there are no statements or actions on the record here that clearly indicate the judge and the prosecutor understood that Appellant was raising the recorded recollection hearsay exception as a ground for admission. By failing to raise the recorded recollection exception as embodied in Rule 803(5) as a ground for admission in the trial court, Appellant has preserved nothing for our review.

Second, while Appellant had Lionel's written statement marked as Defendant's Exhibit 16, he never formally offered the exhibit into evidence. More importantly, Appellant also did not make an offer of proof of the excluded exhibit. *See* TEX.R.EVID. 103(a)(2) (requiring an offer of proof to preserve error when the trial court excludes evidence). Consequently, Lionel's written statement is not contained in the appellate record. For a complaint concerning the exclusion of evidence to be considered by an appellate court, the record must show what the excluded evidence would have been. *Stewart v. State,* 686 S.W.2d 118, 122 (Tex.Crim.App. 1984); *see also Smith v. State*, No. 08-11-00167-CR, 2012 WL 5359234, at *7 (Tex.App. – El Paso Oct. 31, 2012, no pet.) (not designated for publication). The complaining party must comply with Rule 103 by making an offer of proof which sets forth the substance of the proffered evidence. *Mays v. State,* 285 S.W.3d 884, 889 (Tex.Crim.App. 2009); *Smith*, 2012 WL 5359234, at *7; *see also Reyna,* 168 S.W.3d at 176 ("We have held, and the Rules of Evidence make clear, that to preserve error in the

exclusion of evidence, the proponent is required to make an offer of proof[.]");*Warner v. State,* 969 S.W.2d 1, 2 (Tex.Crim.App. 1998) (to preserve error, an offer of proof, "must include a reasonably specific summary of the evidence offered").

Appellant failed to make an offer of proof detailing what the excluded evidence would have been. Other than some vague representations by counsel that Lionel may have implicated someone else in the murder, the record on appeal is devoid of anything showing the substance of Lionel's written statement. We thus have no basis for reviewing the contention that the trial court erred in excluding the evidence in question. *Hitt v. State,* 53 S.W.3d 697, 708 (Tex.App. – Austin 2001, pet. ref'd); *Smith*, 2012 WL 5359234, at *7. We cannot decide whether evidence was improperly excluded unless the evidence is included in the record for review. *Moreno Denoso v. State,* 156 S.W.3d 166, 177 (Tex.App. – Corpus Christi 2005, pet. ref'd); *Smith*, 2012 WL 5359234, at *7. In sum, without a record of the substance of Lionel's statement, we cannot determine on appeal if the trial court abused its discretion in excluding the statement and if it did, whether any error was harmful. Issue Two is overruled.

## CONCLUSION

The trial court's judgment is affirmed. The trial court certified Appellant's right to appeal in this case, but the certification does not bear Appellant's signature indicating that he was informed of his rights to appeal and to file a pro se petition for discretionary review with the Texas Court of Criminal Appeals. *See* TEX.R.APP. P. 25.2(d). The certification is defective, and has not been corrected by Appellant's attorney or the trial court. To remedy this defect, this Court orders Appellant's attorney, pursuant to Rule 48.4, to send Appellant a copy of this opinion and this Court's judgment, to notify Appellant of his right to file a pro se petition for discretionary

12

review, and to inform Appellant of the applicable deadlines.  *See* TEX.R.APP.P. 48.4, 68.

Appellant's attorney is further ORDERED, to comply with all of the requirements of Rule 48.4.


                                    STEVEN L. HUGHES, Justice

August 24, 2016

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)


13